IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAROLD E. COX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-11-03949 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 11) and Defendant's cross Motion for Summary Judgment (Document No. 10). After considering the cross motions for summary judgment, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court[1] ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the Commissioner's decision is AFFIRMED.

---

[1] On 5/17/2012, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. See Document No. 9.

## I. Introduction

Plaintiff Harold E. Cox (Cox) brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 205(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Social Security Disability Insurance benefits (SSDI) and Supplemental Security Income benefits (SSI). Cox argues that substantial evidence does not support the Administrative Law Judge's (ALJ) decision and that the ALJ erred because: (1) he failed to properly identify plaintiff's exertional limitations in his Residual Functional Capacity (RFC) assessment; (2) he failed to identify plaintiff's mental limitations in his RFC assessment; and (3) he failed to apply the proper legal standards. (Document No. 12). The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's findings and his disability decision, that he properly identified all relevant physical and mental determinations, that the decision comports with applicable law, and that it should therefore be affirmed. (Document No. 10-1).

## II. Administrative Proceedings

On November 19, 2009, Cox applied for SSDI and SSI, claiming that he "became unable to work because of [his] disabling condition on April 15, 2008." (Tr. 143). Cox claimed that he is disabled because of "back problems[,] hbp[,] asthma" and "depression." (Tr. 177, 205). On December 15, 2009, the Social Security Administration denied his claim and on March 17, 2010, the Social Security

Administration denied his claim on reconsideration. (Tr. 90, 102). Cox then requested a hearing before an ALJ. (Tr. 115-116). The Social Security Administration granted his request and Gary J. Suttles, the ALJ, held a hearing on October 13, 2010, during which he considered Cox's claims *de novo*. (Tr. 34). On October 27, 2010, the ALJ issued his decision, finding that Cox "has not been under a disability within the meaning of the Social Security Act from April 15, 2008, through the date of this decision." (Tr. 4). The ALJ found that Cox met the insured status requirements of the Social Security Act through March 31, 2013. *Id.* At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 15, 2008, the alleged onset date. (Tr. 6). At step two, the ALJ found that Cox is severely impaired in the form of "lumbar spine degenerative disc disease (DDD), chronic obstructive pulmonary disease (COPD), and depression." (Tr. 6). At step three, the ALJ found that Cox "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 7). At step four, the ALJ concluded that Cox

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit-stand option at will and can walk four of eight hours for a full eight hour day. His ability to push, pull, and gross and fine manipulation is unlimited except he can only occasionally push with the lower extremities, bilaterally. He can only occasionally bend, stoop, crouch, crawl, balance, twist, squat, and climb stairs. He can never climb ladders, ropes, scaffolds or run. He can have only limited exposure to dust, fumes, gases, chemicals, heights, dangerous machinery, and uneven

3

> surfaces. He has the ability to get along with others, understand detailed instructions, concentrate and perform detailed tasks, and respond and adapt to workplaces [sic] changes and supervision.

(Tr. 9). The ALJ further found Cox could not perform any of his past relevant work. (Tr. 12). However, at step five the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 13). The ALJ, using section 204 *et seq.* of the Medical-Vocational Guidelines as a framework and having the benefit of a vocational expert's testimony, concluded that Plaintiff could perform light work and is therefore not disabled. (Tr. 13).

Cox sought review of the ALJ's adverse decision with the Appeals Council. After considering Cox's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on August 31, 2011, that there was no basis upon which to grant Cox's request for review. (Tr. 18). The ALJ's findings thus became final.

Cox filed a timely appeal of the ALJ's decision. Both sides have filed Motions for Summary Judgment. (Document Nos. 10, 11). This appeal is now ripe for ruling.

## III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits "is limited to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Jones*, 174 F.3d at 693 (quoting *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985)). "Conflicts in the evidence are for the [Commissioner] to resolve." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no

5

contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1983) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through "medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in *any* substantial gainful activity." *Anthony*, 954 F.2d 289, 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

6

The Commissioner applies a five-step sequential process to decide disability status:

> 1. If the claimant is presently working, a finding of "not disabled" must be made;
> 2. If the claimant does not have a "severe impairment" or combination of impairments, she will not be found disabled;
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, she will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found that Cox

> has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) except he requires a sit-stand
> option at will and can walk four of eight hours for a full eight hour day.
> His ability to push, pull, and gross and fine manipulation is unlimited
> except he can only occasionally push with the lower extremities,
> bilaterally. He can only occasionally bend, stoop, crouch, crawl,
> balance, twist, squat, and climb stairs. He can never climb ladders,
> ropes, scaffolds or run. He can have only limited exposure to dust,
> fumes, gases, chemicals, heights, dangerous machinery, and uneven
> surfaces. He has the ability to get along with others, understand
> detailed instructions, concentrate and perform detailed tasks, and
> respond and adapt to workplaces [sic] changes and supervision.

(Tr. 9). The ALJ further found that though Cox has been unable to perform his past relevant work, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 12, 13). These jobs include: mail clerk (1,200 jobs regionally and 285,000 nationally); office helper (1,000 jobs regionally and 190,000 nationally); and weigher (850 jobs regionally and 155,000 nationally). (Tr. 13). The ALJ then concluded that Cox was not disabled. (Tr. 14). In this appeal, the Court must determine whether substantial evidence supports the ALJ's RFC finding and whether the ALJ used the correct legal standards in arriving at his decision.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by plaintiff and corroborated by family

8

and neighbors; and (4) plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

## V. Discussion

## A. Objective Medical Facts

The objective medical evidence shows that Cox suffers from depression, chronic obstructive pulmonary disease (COPD), and lumbar spine degenerative disc disease (DDD). (Tr. 6). Plaintiff is unable to pinpoint exactly when he became disabled, but he loosely points to an incident on the job shortly before he stopped working. Doctors have since performed MRIs and physical exams, and have decided to treat Cox's problems through pain management. Though Cox experiences constant pain, his impairments do not rise to the level of disabilities.

The ALJ concluded that Plaintiff suffers from three separate impairments: depression, COPD, and DDD. Of the three, only Cox's DDD is medically recorded, and nothing in the medical record indicates its source. There is no objective medical evidence of Cox's depression save the sole fact that he takes anti-depression medication. (Tr. 233, 297, 441). Concerning his COPD, the only evidence is the smoking that likely caused it and the fact that Cox uses an Albuterol inhaler. In 2009, Cox denied any shortness of breath, coughing, or similar symptom, and since then he has made no contrary statement concerning his ability to breathe. (Tr. 233). All remaining objective medical evidence concerns Plaintiff's DDD and its related pain.

Plaintiff is unsure when exactly he began suffering from DDD, but associates the inception of this impairment with a particular fall that prevented him from working as chief engineer on a motor vessel in April 15, 2008. (Tr. 38). However, Cox's medical records show that an MRI dated February 5, 2007 had revealed problems with his L4/L5 and L5/S1 discs. (Tr. 274). At that appointment, the doctor advised Plaintiff to go to an orthopedic consult, but he declined to do so at that time. (Tr. 275-76). In August of 2008, he did go to the orthopedic surgery consult, and after deciding that his pain medications were ineffective the orthopedic office performed another MRI. (Tr. 260). That MRI confirmed what they already knew— that Plaintiff's discs were bulging and/or protruding. *Id.* The following March (2009), the orthopedic surgeon noted that Cox was a "poor surgical candidate" and referred him to the pain clinic. (Tr. 261). On April 30, 2009, Cox attended a pain therapy group with Veteran Affairs. (Tr. 258-60). At the meeting, Cox learned methods of managing his pain in order to live more comfortably with it. (Tr. 259). Pain therapy sessions continued to occur regularly, but although he responded to a questionnaire that he would recommend the sessions to others, Cox has not attended since the first session. *Id.*

Cox goes to the VA annually for physical exams, and those exams have continually reported that Cox is able to perform a variety of motor functions. The ALJ wrote about this evidence:

10

> Despite his allegations of pain, the claimant has had multiple negative straight leg raise examinations (Exhibits 1F46, 1F52, 5F10), and has normal lower extremity strength, hip flexors, abductors, external rotators, internal rotators, quadriceps, hamstrings, foot dorsiflexion, plantar flexion foot inversion, and foot eversion (Exhibit 1F11). Finally, in April 2010, a physical examination revealed 5 out of 5 strength is [sic] his upper and lower extremity muscle groups (Exhibit 5F10).

(Tr. 6-7).

Throughout 2008 and 2009, Plaintiff scheduled and cancelled several pre-pain screening appointments (a prerequisite to treatment) until he finally went in on October 13, 2009. (Tr. 218-19, 228-29). After the screening, he scheduled a pain consult for November 24, 2009. (Tr. 215). At the consult, the nurse reported that the "[c]urrent reported pain level is acceptable to the patient" and that the "Highest Comfort level is 0." (Tr. 236). The orthopedic surgeon's office then scheduled Cox for an epidural on December 23, 2009. (Tr. 240). The epidural injection was successful, and afterwards Plaintiff responded that his pain level was at 0 of 10. (Tr. 307-08, 309-10). Since then, Cox has had several follow-up appointments, but none were significant. His most recent MRI in the record shows that the condition of his L4/L5 disc is degenerating; however, he is still not a viable surgery candidate. (Tr. 414, 417-18). He continues to smoke and drink alcohol, has not attended pain management sessions, and has delayed his next epidural procedure. (Tr. 370, 377, 382, 388, 389, 398).

The objective medical facts support the ALJ's conclusion of "not disabled" because the facts are insufficient to prove that Cox's impairments meet or medically equal a disability listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. Cox's DDD fails to meet or medically equal Section 1.04 of Appendix 1 because Cox "lacks the requisite motor and sensory deficits and there is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." (Tr. 8). Cox's COPD fails to meet or medically equal Section 3.02A because he "does not have the requisite pulmonary function deficits." *Id.* Lastly, Cox's depression fails to meet or medically equal listing 12.04 because neither paragraph B nor paragraph C of that section was met. (Tr. 9). The objective medical facts provide substantial evidence in support of the ALJ's decision. In addition, the objective medical evidence set forth above does not support the conclusion that Cox is unable to engage in substantial gainful activity.

## B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.

2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."). In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore*, 919 F.2d at 905).

In the decision, the ALJ thoroughly summarized and weighed the diagnoses and expert opinions:

> After complaining of chronic low back pain, the claimant underwent a February 2007 MRI, which revealed degenerative changes and posterior disc bulges at L4-L5 and L5-S1 (Exhibit 1F52). These findings were confirmed by an August 2008 MRI (Exhibit 1F6, 1F28). To treat his low back pain, the claimant was prescribed pain medications, underwent one epidural steroid injection, and was prescribed a transcutaneous electrical nerve stimulation machine (Exhibits 1F18, 1F37, 1F46, 3F1-2, 5F1, 5F10). Despite his allegations of pain, the claimant has had multiple negative straight leg raise examinations (Exhibits 1F46, 1F52, 5F10), and has normal lower extremity strength, hip flexors, abductors, external rotators, internal rotators, quadriceps, hamstrings, foot dorsiflexion, plantar flexion, foot inversion, and foot eversion (Exhibit 1F11). Finally, in April 2010, a

physical examination revealed 5 out of 5 strength in his upper and lower extremity muscle groups (Exhibit 5F10).

In addition, the claimant has a history of COPD, which he characterizes as asthma during the hearing (Exhibits 1F18, 3F53-4, 5F3, 5F12, 5F15, Hearing record). To control his COPD, the claimant uses inhalers and a nebulizer (Exhibits 1F19, Hearing record). With these the claimant denied symptoms of shortness of breath, cough, hemotysis, dyspnea, and orthopnea during a yearly visit with his primary care physician in late 2009 (Exhibit 1F18, 3F7).

Turning to his mental impairment, the record reflects that in November 2009, the claimant complained of depressive symptoms including fatigue, sleep disturbances, and poor motivations to get out and do things. To treat these symptoms, he takes psychotropic medications (Exhibit 1F18, 3F7).

. . . .

As for the opinion evidence, the undersigned has considered the State agency medical consultant's physical assessment. Dr. Frank Cremora opined that the claimant can perform the full range of medium work (Exhibit 2F). However, considering the objective medical evidence of record, and affording some weight to the claimant's testimony, the undersigned finds the claimant's residual functional capacity is more consistent with the [sic] less than the full range of light work.

. . . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rules 202.21 and 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled, light occupational base, the undersigned asked the vocational expert, Thomas King, whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. Mr. King testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

14

| Job Title | Dictionary of Occupational Titles No. | Exertional / Skill Level | Number of Jobs in the Local Economy | Number of Jobs Nationally |
|---|---|---|---|---|
| Mail clerk | # 209.687-026 | Light, unskilled | 1,200 | 285,000 |
| Office helper | #239.567-010 | Light, unskilled | 1,000 | 190,000 |
| Weigher | # 222.387-074 | Light, unskilled | 850 | 155,000 |

. . . .

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(Tr. 6-7, 12, 13-14). This summary is accurate and gives fair treatment to all of the diagnoses and expert opinions in the record. None of the opinions is conclusory; the medical opinions are all grounded in physical and psychological examinations, and the vocational expert's opinion is based on a comprehensive hypothetical and experience placing workers in those jobs. Accordingly, these diagnoses and opinions support the ALJ's decision.

## C. Subjective Evidence of Pain and Disability

The third element considered is the subjective evidence of pain and disability, including the claimant's testimony and corroboration by family and friends. Not all pain and subjective symptoms are disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security

Disability Benefits Reform Act of 1984, 42 U.S.C § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment that could reasonably be expected to cause pain. Statements made by the individual or her physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (quoting *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). In an appeal of a denial of benefits, the Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

At the hearing before the ALJ, Cox claimed that he had been fired because of his impairment and that his pain was the reason he couldn't work. (Tr. 38-39). The ALJ's decision evinces the fact that he doubted this testimony, and this decision was supported by the evidence because Plaintiff's previous responses to medical questionnaires regularly contradicted his statements at the hearing. Regarding Cox's subjective evidence of disability, the ALJ wrote:

> The claimant testified that he last worked 2 years ago as a chief engineer on a motor vessel. He reported that he left the job because he could not physically perform the work secondary to his chronic low

16

back pain. The claimant testified that he has received an epidural steroid injection to treat his low back pain. He also treats his pain with prescription medication including tramadol and hydrocodone. He reported that he has not been recommended for surgery and has never undergone physical therapy, but he has been recommended for another round of injections, and which were not scheduled at the time of the hearing (Hearing record).

In addition to his low back pain, the claimant testified that he has 'asthma', which the record reflects is characterized as COPD (Exhibit 5F15). To control his 'asthma', he carries an inhaler with him and uses a nebulizer machine at home. Despite his condition, the claimant testified that he continues to smoke (Hearing record).

Although the claimant testified he does not have any mental problems, he reported taking antidepressants. He explained that he has been on them for a while and his dosage was recently increased (Hearing record).

Turning to his activities of daily living, the claimant testified that he wakes up, sits on the couch, drinks coffee, and watches television. He also sits outside at the picnic table watching the squirrels and cats play and separating nuts and bolts. The claimant testified that he reads a handyman magazine with craft projects and art projects. From this magazine, he explained that he has made a wishing well, a sailboat, catapult, and a wooden race car. Further, the claimant testified that he enjoys reading classic novels including Moby Dick and Treasure Island. In terms of hobbies, he stated he enjoys building model cars and airplanes, playing Yahtzee with his wife, playing dominoes, and playing cards (Hearing record).

Further, the claimant testified that he is physically limited as a result of his low back pain. He reported that when he walks excessively, his legs start burning and go numb. To relieve the pain he has to sit down almost immediately. He reported that his most comfortable position is sitting, especially leaning off to one side. He stated that he is able to stand for 15 to 20 minutes at a time before needing to sit. In addition, he is able to sit for two hours at a time, bend at the knees, and squat. The claimant reported that his back pain is exacerbated when he carries weight, although he reported being able to comfortabl[y] lift a 20 pound bag of cat food. At nighttime, the claimant takes sleeping

pills because his back pain wakes him up. He testified that the side effects include the inability to remember things such as when to take his medications. He also reported that he noticed he is forgetting things (Hearing record).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 10-11).

It was within the province of the ALJ to disbelieve Plaintiff's testimony because his testimony contradicted the record and his own previous statements. First, the record shows that Plaintiff was able to work with the same or similar impairments he currently has because he stated his back pain started in 2007. (Tr. 219, 377). Second, Plaintiff's statement that he left work because he was injured is contradicted by his previous statements that he left work because he "wasn't called back." (Tr. 38-39, 165, 177, 271). Third, Plaintiff's level of daily activity disproves his claims that he is too impaired to work. Cox testified at the hearing that he went to the park or church a few times a month, socialized on a regular basis, and completed jigsaw puzzles and models. (Tr. 10-11, 63-70). Cox also performs all of his own caretaking activities. (Tr. 197-99). Fourth, Plaintiff stated that he regularly experienced pain on a level of "8 out of 10," but the medical evidence showed that he only experienced that level of pain absent regular epidurals. After receiving his epidural on December 23, 2009, Cox reported experiencing no pain at all. (Tr. 307-

18

08). Further, it was Plaintiff who delayed the epidural visits, having failed to contact the doctor to reschedule appointments he missed. (Tr. 370, 388, 389). Lastly, Cox has failed to seek the recommended treatment for each of his impairments, even though treatment has repeatedly been offered. He refused physical therapy because he "lives too far." (Tr. 377). He refused a mental health referral because he "doesn't stay in area long enough to attend TX sessions." (Tr. 275). He also continues to smoke and said he would not try to quit despite the fact that he has COPD and has been advised numerous times to quit. (Tr. 234, 238, 247, 335, 343, 359). Plaintiff's failure to take advantage of assistance that has been offered suggests that his impairments are not as severe as he claims they are. All of these inconsistencies support the ALJ's decision to give little weight to Cox's testimony.

The ALJ considered Cox's testimony, but ultimately deemed it unpersuasive. Concerning the accuracy of Plaintiff's claims, the ALJ noted:

> In evaluating the persuasiveness of the testimony, the undersigned notes that the claimant described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In addition to the activities described in his testimony above, he also performs household chores such as putting his clothes in the hamper, putting dishes in the sink, and picking up around the house. In addition, he waters the plants and remains able to prepare meals including sandwiches, soup, and frozen dinners (Exhibit 6E5). Overall, the claimant's actual daily activities reveal a significantly greater physical and mental functional ability than alleged.
>
> Although the claimant is taking anti-depressants, the claimant's testimony and medical record reveals relatively infrequent trips to the doctor for depression. Indeed, the undersigned notes that the claimant

testified that he only recently went for the first time to visit a psychiatrist in September 2010, and his next appointment is scheduled for December. Further, despite allegations of depression, the claimant has described daily activities that demonstrate significant and detailed mental functioning. For example, the claimant testified he builds crafts, reads, watches television, plays cards and other games, and reads classic novels (Hearing record).

Although the claimant has received treatment for his DDD and chronic low back pain, that treatment has been essentially routine and conservative in nature. The claimant has primarily managed his back pain with prescription medications. Further, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Indeed, the record reflects that the claimant declined to undergo physical therapy, explaining that he lived 'too far from the therapy office' (Exhibit 5F10). In addition, he has not been recommended for surgery and has instead been advised to continue to manage his pain [medicinally] (Exhibits 1F47, 1F49). The lack of medical treatment and evidence in the record must be considered in assessing the individual's condition.

As for the opinion evidence, the undersigned has considered the State agency medical consultant's physical assessment. Dr. Frank Cremora opined that the claimant can perform the full range of medium work (Exhibit 2F). However, considering the objective medical evidence of record, and affording some weight to the claimant's testimony, the undersigned finds the claimant's residual functional capacity is more consistent with the [sic] less than the full range of light work.

(Tr. 11-12). The record shows that the ALJ took Cox's testimony into consideration because the ALJ relied on it in part to determine Cox's RFC. (Tr. 12). While a medical expert who reviewed Cox's records opined that Cox could perform medium work, the ALJ determined, after reviewing all of the objective medical evidence and Cox's own subjective testimony, that Cox was able to perform only a restricted range of light work. *Id.* Thus, while not accepting all of Cox's testimony as to his

subjective symptoms, the ALJ did take it into consideration. Therefore, this factor also supports the ALJ's decision.

## D. Education, Work History and Age

The last factor is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(a). In this case, the ALJ relied on the vocational expert's hearing testimony in deciding this issue. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's . . . hypothetical questions

(including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Id.*

The record shows that Cox was fifty-two years old at the time of the administrative hearing, earned his GED and received some college training, and had experience working as a chief engineer on a motor vessel and a journeyman construction carpenter. (Tr. 37, 70-71, 80-81). Based on the objective medical evidence, the diagnoses and expert medical opinions, and Cox's own subjective complaints, the ALJ determined that Cox had the following RFC:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit-stand option at will and can walk four of eight hours for a full eight hour day. His ability to push, pull, and gross and fine manipulation is unlimited except he can only occasionally push with the lower extremities, bilaterally. He can only occasionally bend, stoop, crouch, crawl, balance, twist, squat, and climb stairs. He can never climb ladders, ropes, scaffolds or run. He can have only limited exposure to dust, fumes, gases, chemicals, heights, dangerous machinery, and uneven surfaces. He has the ability to get along with others, understand detailed instructions, concentrate and perform detailed tasks, and respond and adapt to workplaces [sic] changes and supervision.

(Tr. 9). The ALJ then questioned Thomas King, a vocational expert, at the hearing about Cox's ability to engage in substantial gainful activity. The ALJ posed a hypothetical question to the vocational expert which incorporated all of Cox's impairments that the ALJ found supported by the record. (Tr. 81-83). The ALJ asked the Vocational Expert to consider, based on the testimony offered at the hearing, the following hypothetical questions:

22

ALJ: . . . He's got his GED, exertional ability to occasionally lift 20 pounds and 10 pounds frequently with a sit/stand option at will, walking ability four of eight. His push/pull and gross/fine is unlimited except occasional pushing with the lower extremities bilaterally, occasional stairs, no ladders, ropes, scaffolds, or running, occasional bend, stoop, crouch, crawl, balance, twist and squat, even though he's a voluntary smoker of concernable [sic] amount, I'm going to limit him from exposure to dust, fumes, gases, chemicals because of his asthma, heights, dangerous machinery and uneven surface. Mentally he has the ability to get along with others, he can understand detailed instructions, concentrate and perform detailed tasks and respond or adapt to workplace changes and supervision. Based on that, can he do any past work?

VE: Under that hypothetical, Judge, he can not perform any of his past work.

ALJ: Any transferables?

VE: He has required [sic] transferable work skills from past work. Those skills would be he has the ability to follow oral and written instructions, he has the ability to use hand tools and power tools. He also has the ability to read work schematics and some record keeping skills.

ALJ: Okay, could those skills transfer into any specific jobs?

VE: I don't believe—based on the climate control, the dust fumes, he has skills that would transfer to light bench work but those skills, he would be around dust fumes and chemicals and some dangerous equipment. So they would not transfer under that hypothetical.

ALJ: Okay but he's got some but given the limitations.

VE: Yeah, primarily the limitations with the dust fumes and dangerous equipment.

ALJ: Okay, all right, what kind of work with those restrictions could somebody perform, in [sic] anything?

23

VE: Yes, judge, under that hypothetical a person could perform—there would be jobs at the light, unskilled work base that he could perform. Three examples that I could give you, a person could work as a mail clerk, this would be DOT code 209.687-026. There would be around 1,200 of these jobs in the regional economy. For the national economy, there would be around 285,000. Another example would be an office helper, DOT code 239.567-010. There would be around 1,000 of these jobs in the regional economy. For the national economy, there would be 190,000. A third example would be, excuse me, would be a weigher, DOT code 222.387-074. There would be around 850 of these jobs in the regional economy and for the national economy, 155,000.

ALJ: All right and those are DOT consistent?

VE: Yes, sir.

(Tr. 81-83). Here, the ALJ relied on a single comprehensive hypothetical question to the vocational expert. Because the hypothetical question included all and only those impairments borne out by the record, and because it adequately reflected the findings established by the medical records, the ALJ adequately developed the record.

As to Cox's arguments on appeal—that the ALJ did not make a specific finding as to his ability to stand and did not identify or include any mental limitations in his RFC determination—both the ALJ's written decision and the record reflect that the ALJ took into consideration Cox's ability to stand and any mental limitations related to his depression. Ultimately, Plaintiff's arguments fail because they ignore the fact that the ALJ made a negative finding concerning both Cox's standing limitations and mental limitations. Plaintiff's first argument fails because the ALJ included a "sit/stand option" for Cox, and this is supported by the

vocational expert's testimony. Plaintiff's second argument fails because the ALJ specifically found that Cox had no mental limitations.

Plaintiff first claims on appeal that the ALJ erred by not specifically enumerating for how long Cox could stand in an 8-hour workday. (Document No. 12). However, the ALJ determined that Cox could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit/stand option." (Tr. 9). By referencing sections 404 and 416, the ALJ acknowledged and incorporated the statutory language that light work "requires a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR § 404.1567(b), 416.967(b). The statutory language does not restrict the "light work" category to only those jobs that require standing; rather, it encompasses jobs that instead require large amounts of walking or sitting while operating controls. Accordingly, the ALJ did not need to make a specific finding concerning how many hours Cox could stand in a workday because that was not a component of the light work that was suggested by the vocational expert. (Tr. 13). Alternatively, if the ALJ was required to make a finding concerning for how long Cox can stand, his finding that Cox could walk for four hours in a workday obviates this need because the act of walking also includes standing. (Tr. 9).

Plaintiff next claims that the ALJ erred by not identifying Cox's mental limitations in the RFC. (Document No. 12). In making this argument, Plaintiff relies on: claims of memory loss, the fact that Cox was prescribed depression

medication, and a conclusory medical finding that Cox has insomnia and depressed moods. *Id.* However, neither Plaintiff's claim of memory loss nor his prescription is backed by objective medical evidence, and the ALJ cannot give deference to conclusory medical opinions. *Scott*, 770 F.2d at 485. Alternatively, even if this evidence deserved to be given weight, Plaintiff contradicted it at the hearing by repeatedly denying that he had a mental impairment. (Tr. 60-63). The ALJ determined that, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 11). Therefore, the ALJ took Cox's mental impairments into consideration but ultimately decided not to include any limitations in the RFC, and this determination was supported by substantial evidence.

Because the ALJ has determined that Cox is not wholly credible, his decision is consistent with the Vocational Expert's testimony regarding the type of work that Cox is able to perform. (Tr. 9). Because there is substantial evidence in the record to support the ALJ's conclusion that Cox can perform light work with a sit or stand option, and because the vocational expert testified that Cox could perform specific jobs that exist in substantial numbers in the regional and national economies, this final factor also supports the ALJ's decision.

## VI. Conclusion and Order

As all four factors weigh in support of the ALJ's decision, the Court ORDERS that Defendant's Cross-Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 11) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 27 day of _____ July _____, 2012.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

27